IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ADOLF JEWELERS, INC.,

Plaintiff,

v.

JEWELERS MUTUAL INSURANCE CO.,

Defendant.

Action No. 3:08–CV–233

MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss Counts II and III of Adolf Jewelers, Inc.'s Complaint by Jewelers Mutual Insurance Co. ("JMIC"). For the reasons stated in this Memorandum Opinion, the Motion will be GRANTED: Count II will be DISMISSED WITH PREJUDICE and Count III will be DISMISSED WITHOUT PREJUDICE. But, Adolf may amend Count I of its Complaint to allege more specifically that it has suffered consequential damages.

1. Background

JMIC has insured Adolf's jewelry business since 1999. For the period from September 2005 to September 2006, Adolf's policy provided $200,000 of coverage for losses resulting from "employee dishonesty." In 2006, Adolf increased the limit of that coverage to $500,000. Then, in June 2007, Adolf discovered that one of its employees had stolen at least $593,000 in jewels, a crime that began in 2004. Adolf filed a claim with JMIC but, even though the employee pled guilty to embezzling more than $500,000 in

jewels, JMIC paid Adolf only $325,000. According to Adolf, JMIC refused to pay the full amount of the loss because, after "a lengthy adjustment process," JMIC allocated $125,000 of the loss to the 2006–07 policy year, which it paid, and allocated the rest of the loss to the 2005–06 policy year, for which JMIC paid the limits of that policy, $200,000. Pl.'s Compl. ¶ 14. Adolf also alleges that after JMIC decided that it would not pay for the rest of the loss, it "stopped investigating and adjusting the loss." Id. ¶ 15. In addition, Adolf claims that JMIC failed to provide coverage for the consequences of the theft (e.g., interest, loss of income, and costs of accounting).

In Count I, Adolf claims that JMIC breached the terms of the policy, arguing that if that contract is ambiguous, it must be strictly construed against JMIC. In Count II, Adolf claims that JMIC violated the duty of good faith and fair dealing that it owed to Adolf by "deliberate[ly]" and "malicious[ly]" refusing to pay the full amount of the policy. Id. ¶ 31. As a result, Adolf alleges, it incurred "unnecessary and considerable costs and other damages," and Adolf asks for punitive damages to deter that type of conduct. Id. ¶¶ 32–33. Finally, in Count III Adolf asks for its costs and attorneys' fees under Virginia Code § 38.2–209.

JMIC asks the Court to dismiss Count II, arguing that under Virginia law, a party may not recover punitive damages for a breach of a contract unless the breach also constitutes an independent tort, and that denying coverage under an insurance policy is not tortious. JMIC also asks the Court to dismiss Count III without prejudice, on the ground that it is premature because the Court has not yet entered a judgment against JMIC.

2. Discussion

A motion to dismiss for failure to state a claim for which relief can be granted, see Fed. R. Civ. P. 12(b)(6), challenges the legal sufficiency of a claim, not the facts supporting it. Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Thus, in ruling on a Rule 12(b)(6) motion, a court must regard as true all of the factual allegations in the complaint, Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), as well as any facts that could be proved that are consistent with those allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, Christopher v. Harbury, 536 U.S. 403, 406 (2002). The plaintiff does not have to show that it is likely to obtain relief: if the complaint alleges – directly or indirectly – each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1969 & n.8. (2007). But, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests"; thus, the plaintiff must allege facts that show that its claim is plausible, not merely speculative. Bell Atl. Corp., 127 S.Ct. at 1964, 1966; see Fed. R. Civ. P. 8(a)(2). And, the court does not have to accept legal conclusions that are couched as factual allegations, Bell Atl. Corp., 127 S.Ct. at 1964, or "unwarranted inferences, unreasonable conclusions, or arguments," E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). In summary, a complaint may be dismissed either because it alleges facts for which the court cannot grant relief, or because it states a claim that is cognizable but speculative because it is not supported by facts.

JMIC argues that Counts II and III of Adolf's Complaint should be dismissed because they state claims for which the Court cannot grant relief (in the case of Count III, at this time).

A. Count II: Punitive Damages

JMIC argues that the Court should dismiss Count II because (1) under Virginia law, a party may recover punitive damages for a breach of a contract only if the breach constitutes an independent tort, and (2) denying coverage under an insurance policy does not constitute an independent tort. Adolf responds that the Virginia Supreme Court has recognized a cause of action "for bad faith" in a context related to insurance. Pl.'s Mem. Opp. Def.'s Mot. Dismiss at 2. Adolf's position lacks merit, however.

In 1983, the Virginia Supreme Court held – in a suit arising from an alleged breach of an employment contract – that to receive punitive damages for the breach of a contract, a party must provide "proof of an independent, wilful tort, beyond the mere breach of a duty imposed by [the] contract ... regardless of the motives underlying the breach." Kamlar Corp. v. Haley, 299 S.E.2d 514, 518 (Va. 1983). Accordingly, the Haley Court vacated an award of punitive damages that was based on a "breach of contract inspired by an ulterior motive," since the breach did not constitute an independent tort. Id.

Three years later, the Fourth Circuit, applying Haley, reiterated that a party may recover punitive damages for the breach of a contract "[o]nly if the breach establishes the elements of an independent, wilful tort," adding that an "independent tort" is "one that is factually bound" to a breach of a contract "but whose legal elements are distinct from it." A

& E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 672 (4th Cir. 1986). Thus, showing that a party breached a contract from "an ulterior motive" or "a malicious motive" is not sufficient, id. at 676, 678 (citations omitted); the party's conduct must constitute a violation of a "common law duty, not one existing between the parties solely by virtue of the contract," Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 347 (Va. 1998).[1]

In addition, the A & E Supply court ruled that Virginia "would not recognize ... the tort of bad faith refusal to honor a first-party insurance obligation." Id. at 670. The court held that "liability for bad faith conduct is a matter of contract rather than tort law," since an obligation to perform a contract in good faith "arises from the agreement," even if that duty was not expressly included in the contract. Id. at 676. Since a party may recover punitive damages only if it proves the elements of a tort, and breaching an insurance contract is not a tort, the A & E Supply court reversed the portion of a judgment that awarded punitive damages to a policyholder, even though the court condemned the insurance company's conduct as "discreditable." Id. at 672. Even though the insurance company "contend[ed] without factual support that the insured was responsible for the catastrophe" that gave rise to the dispute; told the policyholder's creditors that the policyholder caused the loss intentionally, thereby limiting the policyholder's ability to obtain credit; violated Virginia law

---

[1] The A & E Supply court added that, since "[t]he circumstances surrounding the dissolution of contractual relations are so frequently beset by strain and suspicion," the party injured by a breach of a contract would frequently charge the breaching party with acting in bad faith. 798 F.2d at 672. Allowing the imposition of punitive damages in those cases would inject uncertainty into contracting, upsetting the balance between risk and obligation that a contract reflects. Id. at 671.

by failing to report its suspicions about the policyholder's conduct; and generally acted "unreasonably," the Fourth Circuit concluded that the insurance company's violation of its duty to act in good faith was not tortious. See id. at 670.

According to Adolf, that ruling was undermined in 1988, when the Virginia Supreme Court recognized that an insurance company may be held liable for acting in bad faith. See State Farm Mut. Auto Ins. Co. v. Floyd, 366 S.E.2d 93, 96–98 (Va. 1988). But, that opinion does not address the questions that this Court must decide. In Floyd, the Virginia Supreme Court "examine[d] the nature of 'bad faith' and the standard of proof by which it must be shown." Id. at 93. Acknowledging that, in a prior opinion, Aetna v. Price, 146 S.E.2d 220, 227–28 (Va. 1966), it had ruled that an insurance company and a policyholder enjoy "a relationship of confidence and trust," the Floyd Court examined the nature of that relationship with respect to a claim that an insurance company acted in bad faith by refusing to settle a claim against a policyholder within the limits of the policy – not a dispute about whether a policy covered a claim. See id. at 96–97. While the Court stated that an insurance company could be held liable for acting in bad faith, it did not hold that acting in bad faith in that context constitutes an "independent tort," noting that an insurance company's duty to act in good faith is created by contract. See id. at 97. Thus, Floyd does not support Adolf's claim that it is entitled to punitive damages; in fact, the Floyd Court did not even address whether that policyholder was entitled to punitive damages. Accordingly, Adolf's position that the Floyd Court "carved out an exception to the ... rule" that punitive damages may be awarded only for an independent tort is incorrect.

Adolf also cites Levine v. Selective Insurance Co. of America, 462 S.E.2d 81 (Va. 1995), in support of its position that the Virginia Supreme Court would recognize a claim for bad faith. While Levine reiterates that parties to a contract owe each other a duty of good faith and fair dealing, it does not describe a breach of that duty as a tort. Id. at 84. Thus, while Adolf correctly argues that Levine shows that Virginia does not "oppose[] bad faith actions," Adolf's position that a Virginia court would award punitive damages for this type of claim for bad faith is incorrect.

That conclusion is supported by the Fourth Circuit's decision in Bettius & Sanderson, P.C. v. National Union Fire Insurance Co. of Pittsburgh, Pa., 839 F.2d 1009, 1015–17 (1988), in which the court ruled that Virginia does not "allow [the imposition of] punitive damages when an insurer, in bad faith, delays or fails to satisfy a claim against its insured," regardless of whether the claim is made by the policyholder or a third party, as well as this Court's recent ruling in TIG Insurance Co. v. Alfa Laval, Inc., 3:07–CV–683, slip op. at 4–5 (E.D. Va. Mar. 5, 2008), noting that in this context, Virginia does not recognize a tort of acting in bad faith because an insurance company may be punished for handling a claim in bad faith by statute, see Va. Code § 38.2–209 (authorizing an award of attorneys' fees and costs to the policyholder). If Adolf's allegations are true, then JMIC acted unreasonably, at worst – not as culpably as the insurance company in A & E Supply. Thus, even if Adolf proves that JMIC breached the terms of Adolf's policy, Adolf has not alleged that JMIC acted in a way that constitutes an "independent tort" (e.g., fraud), a prerequisite for recovering punitive damages under Virginia law.

B.      Count II: Consequential Damages

Even if a violation of a duty to act in good faith does not warrant imposing punitive

damages, Adolf continues, it was harmed by JMIC's failure to act in good faith.  Thus, Adolf

argues that it is entitled to recover consequential damages under Count II.

While an insurer may not be held liable for punitive damages for acting in bad faith,

it is liable for any "general and consequential damages" that result from its failure to act in

good faith – even damages that exceed the limits of the policy at issue.  A & E, 798 F.2d at

677–78; accord Bd. of Supervisors of Stafford County v. Safeco Ins. Co. of Am., 310

S.E.2d 445, 450 (Va. 1983) (implying that a party may recover consequential damages

caused by an action taken in bad faith).  Acknowledging that principle, JMIC contends that

Adolf has not adequately pled a claim for consequential damages in Count II.

Under Twombly, a plaintiff must allege the elements of a "viable legal theory" and

give the defendant "fair notice of what the claim is and the grounds upon which it rests."

127 S.Ct. at 1964, 1969 & n.8.  Adolf has alleged the elements of breach of contract, see

Levine v. Selective Ins. Co. of Am., 462 S.E.2d 81, 84 (Va. 1995) (ruling that an allegation

that a party breached an implied duty of good faith constitutes a claim for breach of

contract), but Adolf's claim is vague.  Adolf alleges that "JMIC's bad faith has caused Adolf

Jewelers to incur unnecessary and considerable costs and other damages."  Pl.'s Compl. at

¶ 32.  And, Adolf claims that it was inconvenienced, lost time, and incurred "other

expenses."  Id.  But, the allegations that Adolf (1) incurred "unnecessary and considerable

costs and other damages," (2) was inconvenienced, and (3) lost time do not give JMIC fair

notice of the grounds for Adolf's claim. Nor do the other allegations in the Complaint clarify the claim. JMIC's decision to pay for only part of Adolf's loss did not change the value of the jewels that were stolen; thus, with the exception of the costs of disputing JMIC's decision, Adolf does not appear to have been damaged further. Thus, since Adolf has not adequately pled this claim, it will be dismissed without prejudice.

C. Count III

In Count III Adolf asks for its costs and attorneys' fees under Virginia Code § 38.2–209(A), which provides:

> In any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney['s] fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

JMIC argues that Adolf's claim is premature, since the Court has not entered a judgment against JMIC, and thus that it should be dismissed without prejudice. In response, Adolf argues that it may allege in more than one way that JMIC acted in bad faith, citing Federal Rule of Civil Procedure 8(d)(2), which permits a party to "set out two or more statements of a claim[,] ... either in a single count ...or in separate ones." And, Adolf contends that section 38.2–209(B), which states that section 38.2–209 does not "grant a right to bring an action against an insurer by an insured who would otherwise lack standing to bring an action," requires that a claim under section 38.2–209 must be brought at the same time as

a claim that the insurance company acted in bad faith. See Pl.'s Mem. Opp. Def.'s Mot. Dismiss at 5.

Section 38.2–209 does not create an independent cause of action. Salomon v. Transam. Occidental Life Ins. Co., 801 F.2d 659, 661 (4th Cir. 1986)[2]; see US Airways, Inc. v. Commonwealth Ins. Co., 2004 WL 1094684, at *9 (Va. Cir. Ct. May 14, 2004) (ruling that a party may not allege a "separate cause of action for bad faith" under section 38.2–209). Since a request for costs and attorneys' fees is not a cause of action, Federal Rule of Civil Procedure 8 – which applies to claims that may be set out "in a ... count" – does not apply. Stated differently, Rule 8 governs the way that claims may generally be pled, not whether a particular claim may be pled. Thus, Adolf's argument that Count III should be allowed to proceed under Rule 8 lacks merit.

In Cradle v. Monumental Life Ins. Co., 354 F. Supp. 2d 632, 635 (E.D. Va. 2005) (Jackson, J.), this Court ruled that a party may seek relief under section 38.2–209 only after a judgment is entered, concluding that the court lacked diversity jurisdiction over the suit because the costs and attorneys' fees available under that section were not part of the amount in controversy. Cradle supports the conclusion that a party may not ask for costs or attorneys' fees under section 38.2–209 in a separate cause of action: if that relief could be

---

[2] Adolf argues that Salomon does not apply because in that case (1) the plaintiff's claims under state law were pre-empted by federal law and (2) the plaintiff did not have standing to sue the insurance company. While the Salomon court held that the plaintiff's claims were pre-empted by federal law, it concluded that the plaintiff did have standing to sue under ERISA. See 801 F.2d at 660. It ruled that the plaintiff's claim under section 38.2–209 failed because that statute does not create a private cause of action, a principle that applies in this case, also. See id. at 661.

sought in a separate cause of action, it would be included in the amount in controversy. Cf. Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 404 (7th Cir. 2004) (ruling that a party could not satisfy an amount-in-controversy requirement "[b]ased on the relief available ... for the causes of action pled in [the plaintiff's] complaint"); Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC, 510 F. Supp. 2d 1015, 1020 (S.D. Fla. 2007) (stating that whether the amount-in-controversy requirement was satisfied should be determined on the basis of the "counts [that] have been sufficiently pled").

In Cradle, the Court relied on US Airways, an opinion by a Virginia court of appeals that ruled that a judgment that the insurance company acted in bad faith is "a condition precedent" to a claim under section 38.2–209. See 2004 WL 1094684 at *9 (granting summary judgment on a claim for bad faith because a judgment had not been entered against the insurance company). Since the Virginia Supreme Court has not resolved this question, the US Airways court's opinion carries weight.[3] See Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967) (stating that a ruling by a lower state court should "not ... be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise").

---

[3] In addition, US Airways is consistent with the Virginia Supreme Court's opinion in Nationwide Mut. Ins. Co. v. St. John, 524 S.E.2d 649, 650 (2000), which states:

> The jury returned a verdict in favor of Joel for $1,581.50, approximately the amount of the unpaid balance of the chiropractic medical bills.... Joel asked the trial court to ... award attorneys' fees because Nationwide acted in bad faith when it refused to pay for chiropractic care incurred after June 15, 1994.

That account of the proceedings in St. John implies that the plaintiff asked for relief under section 38.2–209 after liability was established.

Although this Court has ruled on a claim of bad faith before entering judgment against an insurance company, see, e.g., HHC Assocs. v. Assurance Co. of Am., 256 F. Supp. 2d 505, 508–12 (E.D. Va. 2003), it did so before US Airways was decided, mitigating the force of those rulings. And, while several courts – including this one – have questioned the wisdom of US Airways, see, e.g., Structural Concrete Prods., LLC v. Clarendon Am. Ins. Co., 2007 WL 2437661, at **3–5 (E.D. Va. Aug. 22, 2007) (unpublished) (Dohnal, M.J.); Styles v. Liberty Mut. Fire Ins. Co., 2006 WL 1890104, at **2–3 (W.D. Va. July 7, 2006), those opinions do not clearly state that the plaintiffs in those cases sought relief under section 38.2–209 in a separate count – the salient feature of this matter. Contrary to the Styles court's suggestion, US Airways does not create "a troubling paradox" about how a party may ask for relief under section 38.2–209. While a party must notify its adversary in its complaint that it plans to seek costs and attorneys' fees, and the complaint must contain an allegation of bad faith (which is necessary to support a claim for relief under section 38.2–209), so that the allegation may be investigated during discovery, the party may comply with those requirements by stating that it plans to seek costs or attorneys' fees under section 38.2–209 in its prayer for relief. Neither a separate suit nor a separate count is necessary to satisfy those requirements for relief under section 38.2–209.

In contrast, an allegation of bad faith must be pled in a separate count.[4] But, Adolf has done so adequately in Count I, which incorporates the allegation in paragraph 20 of the

---

[4] In Mayton v. Auto-Owners Ins. Co., 2006 WL 1214831, at *7 (E.D. Va. 2006) (Spencer, C.J.), this Court denied a claim for relief under section 38.2–209 on a motion for summary judgment. But, according to the Court's opinion, the claim was for bad faith – it criticized the insurance company's investigation of the policy dispute – not for costs or attorneys' fees.

Complaint that "JMIC ... acted in bad faith in addressing Adolf Jewelers' claim for coverage." Count I brings the subject of bad faith within the scope of discovery in this matter. And, Adolf has notified JMIC in its prayer for relief that it plans to seek costs and attorneys' fees. Thus, there is no reason for Adolf to seek relief under section 38.2–209 in a separate count. Adolf may seek its costs or attorneys' fees by filing a suitable motion if the Court finds that Adolf is entitled to relief under section 38.2–209. Accordingly, Count III will be DISMISSED without prejudice.

3. Conclusion

For the reasons stated above, the Motion to Dismiss Counts II and III of Adolf's Complaint will be GRANTED.

It will be SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 21st day of July 2008